UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



ROBIN NORWOOD,

    Plaintiff,

v.                                                                Civil Action No. 3:12-cv-457

MICHAEL J. ASTRUE,
*Commissioner of the Social Security*,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the plaintiff Robin Norwood's Objections (Dk. Nos. 14 & 15) to the Magistrate Judge's Report and Recommendation ("R&R") (Dk. No. 13). In 2007, Norwood applied for Social Security Disability ("DIB") under the Social Security Act ("Act"). The Social Security Administration ("SSA") denied her claim twice and an Administrative Law Judge ("ALJ") denied it once.

On appeal, the Appeals Council ("AC") granted Norwood's request for review and remanded her claim for a new hearing. After a second round of denial of benefits and appeal, the AC determined that Norwood met the Act's definition of "disabled" for the closed period of February 7, 2008, through November 8, 2010. Not satisfied with this time limitation, Norwood challenged the ALJ's denial of benefits on the ground that he erred by assigning the treating physician's opinion "little weight"—a decision the Magistrate Judge affirmed in his R&R.

Norwood has now objected to the R&R on a single ground: that the Magistrate Judge applied an incorrect standard of law in evaluating whether substantial evidence supports the ALJ's conclusion that Norwood's treating physician's opinion be accorded "little weight."

For the reasons stated below, the Court OVERRULES Norwood's Objections and ADOPTS the Magistrate Judge's R&R. In brief, this Court finds that substantial evidence exists in the record to support the ALJ's decision to assign Norwood's treating physician's opinion "little weight" because of the physician's inconsistent statements and the lack of support for her opinion in the record.

## I. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Magistrate Judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or part, the Magistrate Judge's recommended disposition. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

This Court, when reviewing a denial of benefits by the Commissioner pursuant to 42 U.S.C. § 405(g), must accept the Commissioner's findings of fact if they are supported by substantial evidence and the Commissioner reached the findings by applying the correct legal standard. *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (clarifying that the question is not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence).

The "substantial evidence" standard is more demanding than the "scintilla" standard, but less demanding than the "preponderance" standard. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2011). Substantial evidence consists of "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). In determining whether substantial evidence exists, the Court must consider the record as a whole. *Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

The Court may not weigh conflicting evidence, evaluate the credibility of evidence, or substitute its own judgment for that of the agency. *Mastro v. Apfel*, 270 F.3d at 176. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* at 179. If the Court does not find that the Commissioner's decision is supported by substantial evidence in the record, or if the ALJ made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## II. BACKGROUND[1]

As noted above, the SSA denied Norwood's claim for benefits four times before the AC determined that she met the Act's definition of disability from February 7, 2008, through November 8, 2010. Norwood bases the current appeal upon the weight the ALJ gave to Norwood's treating physician's opinion.

When reviewing medical records in a DIB claim, the ALJ generally gives a treating physician's opinion greater weight if (1) it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and (2) it is not inconsistent with other substantial evidence in the record. *Craig v. Chater*, 76 F.3d at 589–90; 20 C.F.R. §§ 404.1527(c)(2)–(3), (d)(2) (2012); 20 C.F.R. §§ 404.927(c)(2)–(3), (d)(2) (2012).

But circuit precedent does not require the ALJ to give the treating physician's opinion controlling weight. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (citing *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986)). Indeed, the Fourth Circuit held that when a treating physician's opinion "is not supported by clinical evidence or [] is inconsistent with other substantial evidence, it *should be accorded significantly less weight*." *Craig v. Chater*, 76 F.3d

---

[1] The Magistrate's R&R reviews the facts of this case in great detail. Thus, this opinion discusses only those facts relevant to the disposition of Norwood's objection.

3

at 590 (emphasis added). Accordingly, an ALJ may "assign little or no weight to a medical opinion, *even from a treating source*, based on the factors set forth at 20 C.F.R. 404.1527(d), 416.927(d) if he sufficiently explains his rationale and if the record supports his findings." *Thompson v. Astrue*, 2008 WL 4273840, *11 (W.D. Va. Sept. 17, 2008) (emphasis added).

### III. ANALYSIS

Here, the ALJ did not accord Dr. Hawkins' opinion controlling weight and instead awarded it "little weight." The ALJ accorded the physician's opinion "little weight" because the physician's own records and the evidence as a whole contradicted the physician's opinion. The Magistrate Judge affirmed the ALJ's decision in his R&R. (Dk. No. 13 at 27–31.)

Norwood filed a single objection to the R&R: that the Magistrate Judge applied "an incorrect standard of law to the evaluation of the question concerning the weight assigned to the opinion of Ms. Norwood's treating physician, Dr. Hawkins." (Dk. No. 14 at 1.)

#### A. *The Standard for Weighing a Treating Physician's Opinion*

If an ALJ decides not to give a physician's opinion controlling weight, he then evaluates medical opinion evidence according to the factors enumerated in 20 C.F.R. §§ 404.1527 and 416.927, which state that he will weigh the nature, extent, and length of the treating relationship, the opinion's consistency with the record as a whole, the foundation for the opinion, the degree of specialization required by the medical condition, and any other issues the parties bring to the ALJ's attention. 20 C.F.R. §§ 404.1527(c) and 404.927(c) (2012). The SSA has acknowledged that weighing the support for and consistency of a medical opinion requires a degree of judgment by an ALJ. SSR 96–2P, 1996 WL 374188 (July 2, 1996) (Consistency "is a judgment that adjudicators must make in each case . . . [s]ometimes, there will be an obvious inconsistency

between the opinion and the other substantial evidence . . . other times, the inconsistency will be less obvious and require knowledge about, or insight into, what the evidence means.").

And though the issue of consistency requires judgment on the part of the ALJ, he still must fully and adequately explain the logic he used to arrive at his conclusion; his decision must have a basis in reason and the record. *Thompson v. Astrue*, 2008 WL 4273840 at *11; *Hays v. Sullivan*, 907 F.2d 1453, 1458 (4th Cir. 1990) (describing the ALJ's reasoning and the support for his conclusion in the record). *Cf. Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441 (4th Cir. 1997) (finding that the ALJ committed error "[b]y resolving the conflict of medical opinion solely on the basis of the number of physicians supporting the respective parties"); *Thorne v. Weinberger*, 530 F.2d 580, 582 (4th Cir. 1976) (finding that the ALJ's conclusion "can only be explained by assuming that he completely disregarded the medical evidence.").

### B. The ALJ Adequately Explained His Rationale

Norwood objects to the R&R because she feels that the ALJ did not fully and adequately explain his reasoning in awarding Dr. Hawkins' opinion "little weight." She bases this claim on a sentence from the ALJ's opinion that reads: "The undersigned gave these opinions little weight because there were inconsistencies in her statement and the total medical evidence of record." (Dk. No. 14 at 2.) Norwood claims that this is the *only* sentence in the ALJ's opinion in which he explains why he awarded Dr. Hawkins' opinion "little weight." On this point, Norwood is incorrect.

The ALJ authored the sentence in question in response to Dr. Hawkins' opinion on Norwood's functional capabilities. (R. at 31.) Viewed in isolation, the sentence seems like a summary dismissal of Dr. Hawkins' opinion. But, in the context of the section in which it appears, the sentence logically concludes the ALJ's line of reasoning. (R. at 27–31.)

The ALJ begins his discussion on Norwood's functional capacity with the introduction that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based upon the requirements of 20 CFR 404.1529 and SSRs 96–4p and 96–7p." (R. at 27.) He then outlines Norwood's medical history, (R. at 28–31), spending three long paragraphs describing Dr. Hawkins' treatment of Norwood and the 2008 and 2009 residual functional capacity assessments she completed, noting the differences between them. (R. at 29–30.)

The ALJ next describes the state agency medical and psychological consultants' evaluations of Norwood and how their opinions differ from those of Dr. Hawkins, (R. at 30–31), before announcing his decision to accord Dr. Hawkins' opinion "little weight." (R. at 31.)

Simply put, the ALJ laid out the standard by which he evaluates medical testimony, gave the relevant facts, and then applied the standard to the facts—this is complete and adequate reasoning sufficient to make the parties aware of the basis for his decision. The ALJ did not use a single sentence to discount Dr. Hawkins' opinion; rather, he provided five pages of logical reasoning, which began with a recitation of the standard of law he applied.[2] For the same reasons that the ALJ did not assign Dr. Hawkins' opinion controlling weight, he assigned it "little weight"—because the opinion was inconsistent with the physician's own records, with the record as a whole, and with the reports of other doctors. The ALJ fully explained his rationale, thus the Court finds no error.

---

[2] Norwood cites *Day v. Astrue*, 2010 WL 2735702 (E.D. Va. June 16, 2010), as instructive to the Court in this matter. The Court, however, distinguishes it from the instant suit. In *Day*, the ALJ assigned the treating physician's opinion "weight"—an ambiguous term that "provides the Court with little insight as to how much weight the ALJ gave the opinion"—without articulating "any reason in his decision" for doing so, which the court held as error. *Day v. Astrue*, 2010 WL 2735702 at *6. Here, the ALJ characterized the treating physician's opinion with a proper and unambiguous term—"little weight"—because the opinion stood in contradiction with previous statements and with the record as a whole. The ALJ clearly stated this in his opinion.

### *C. Substantial Evidence Supports the ALJ's Determination*

Substantial evidence must exist in the record to support the ALJ's determination to accord Dr. Hawkins' opinion "little weight." Here, it does. As described above, "substantial evidence" demands more than the "scintilla" standard, but less than the "preponderance" standard. *Mastro v. Apfel*, 270 F.3d at 177. In this context, the substantial evidence standard requires only such evidence that a reasonable mind would accept as adequate to support a contrary conclusion to the conclusion expressed in the medical opinion. SSR 96–2P, 1996 WL 374188 at *3.

Norwood began seeing Dr. Hawkins roughly three to four times a year in 2002 (although her primary physician at that time was Dr. Lagosky). (R. at 877.) Dr. Hawkins became Norwood's primary physician in 2004, when she diagnosed Norwood with cervicogenic headaches, sleep disorder, myofascial pain disorder, and fibromyalgia. (R. at 877–78.) In 2007, Dr. Hawkins added a diagnosis of dystonia. (R. at 878.)

Although Dr. Hawkins tried various treatments for Norwood, (R. at 879), Botox injections appear to have given her the most relief, keeping her pain "under control" and giving her "excellent relief . . . for a very long time after the last Botox injection." (R. at 490, 494, and 486; *see also* R. at 786.)

In 2008, Dr. Hawkins gave Norwood a functional capacity assessment. (R. at 653–55.) In it she concluded that Norwood can lift and carry no more than ten pounds, occasionally carry five pounds, and carry no weight frequently. (R. at 653.) Dr. Hawkins limited Norwood's time spent standing and walking to three hours a day, and thirty minutes without interruption. (R. at 654.) Norwood's impairment did not affect her ability to sit, and she could balance, stoop, crouch, kneel, and crawl occasionally, though she could never climb. *Id.* Dr. Hawkins noted no

impaired physical functions, though she did restrict Norwood's exposure to heights. (R. at 655.) These limitations all contributed to Dr. Hawkins' opinion that Norwood could not maintain a work schedule, and in fact required frequent bed rest because of flare-ups. *Id.*

Nine months later, on July 9, 2009, Dr. Hawkins performed a subsequent functional capacity assessment. (R. at 681–86.) In this assessment, Dr. Hawkins gave Norwood a "poor" prognosis, with diagnoses of chronic pain syndrome, myalgia, malaise, and fatigue. (R. at 682.) Dr. Hawkins noted that Norwood constantly experienced fatigue severe enough to interfere with her concentration and performance of simple tasks, to the degree that Norwood was incapable of performing even "low stress" jobs. (R. at 684.) Again Dr. Hawkins evaluated Norwood's ability to stand, sit, and move, but in this assessment she limited Norwood to forty-five minutes of sitting at a time, twenty minutes of standing at a time, standing and walking for less than two hours in an eight-hour work day, and sitting about four hours in an eight-hour work day. (R. at 685.) And in this assessment, Dr. Hawkins noted that Norwood could rarely lift less than ten pounds, could only occasionally twist, and could rarely stoop, crouch, climb ladders, and climb stairs. (R. at 685.)

Dr. Hawkins judged Norwood to have roughly half the capacity in 2009 as she did nine months earlier, a difference that she claims resulted from Norwood's "chemotherapy and [that] she seemed to be developing a neuropathy and weakness". (R. at 883.) Dr. Hawkins remarked that Norwood's change in condition "also could be a result of her lack of mobility due to her pain or a side effect of the medication as well." *Id.*

Dr. Hawkins confirmed her poor prognosis for Norwood in 2011, when she gave a recorded statement to Norwood's attorney. (R. at 877–889.) There, she states that Norwood would not be able to work in a small, confined space, but "is going to need to be able to move

8

around a lot and at will. If not, she'll start spasming and hurting." (R. at 885.) In addition, Norwood's medications "will make her drowsy and unfocused." *Id.* All these factors will result in Norwood "making simple mistakes." (R. at 885.) Dr. Hawkins also concluded that "just dealing with people" would be impossible for Norwood because of her "severe pain", *id.*, and that Norwood's pain would result in anxiety, depression, fatigue, and an inability to complete tasks or make decisions. (R. at 885–88.)

But this sentiment is not apparent in Dr. Hawkins' medical records—which is the ALJ's main sticking point. Indeed, Dr. Hawkins notes throughout her records that she was able to control Norwood's pain with Botox and other medications. (R. at 764, 773, 786, 869, 878, and 881.) She writes that "Botox [is] very effective", (R. at 859); that the "Botox [is] still working", (R. at 861); and that the injections are "very effective for [Norwood's] headaches and keeping them under control for 3 months at a time." (R. at 760.) Dr. Hawkins notes that Norwood "had excellent relief of her headaches for a very long time after the last [B]otox injection", (R. at 486) and that the "pain [was] under control." (R. at 490–91.) Even in 2010, after chemotherapy, Dr. Hawkins wrote that: "[Norwood] is getting good relief with the Botox. I will see her back in approximately 3 months for repeat injections. I have also actually refilled her oxycodone and her Nuvigil seems to be helping her fatigue a lot." (R. at 756.) In addition, the opinions of the state agency medical and psychological consultants also contradict Dr. Hawkins' 2008, 2009, and 2011 evaluations, which the ALJ notes in his opinion. (R. at 31.)

Viewing the record through the substantial evidence standard, the Court finds sufficient evidence for the ALJ's conclusion that Dr. Hawkins' own records and the weight of the record as a whole contradicts her opinion; as a result, the ALJ did not err in assigning her opinion "little weight."

### D. *Norwood's Attorney Anticipated the Issue of Consistency*

Norwood argues in her objection that the Magistrate Judge's R&R ambushed her by emphasizing that the ALJ accorded "little weight" to Dr. Hawkins' testimony because of its inconsistencies with the SSA medical forms that she provided. (Dk. No. 14 at 2.) Norwood claims that she had not heard this argument before, that the ALJ should have brought it up at the hearing, and that this made her unable to defend herself against it prior to her appearance in this Court. *Id.*

But Norwood's argument belies the foresight of her attorney. When Norwood's attorney took Dr. Hawkins' recorded statement on March 9, 2011 (less than a month before the hearing before the ALJ on April 7, 2011), he described two forms Dr. Hawkins filled out for the SSA and noted significant differences in her answers. (R. at 882–83.) After describing the differences between the 2008 and 2009 forms, Norwood's attorney asked Dr. Hawkins whether "any explanation [exists] for the differences in these opinions?" (R. at 883.) Dr. Hawkins then spent the next three pages explaining the differences between her own evaluations, explaining why her opinion differed from those of the appointed physicians, and giving her thoughts on the "check box format." (R. at 883–86.)

Norwood was aware of the inconsistencies between Dr. Hawkins' 2008 and 2009 assessments and between her opinion and those of the state agency consultants; although the ALJ may not have peppered her with questions about Dr. Hawkins' inconsistencies, Norwood had the issue on her radar a month before the hearing and her claims of surprise, ambush, and unfairness lack merit.

### *E. The Magistrate Judge Did Not Apply an Incorrect Standard of Law*

In reviewing the SSA's decision to deny benefits, the Magistrate Judge must determine whether substantial evidence supports the determination. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In this review, the Magistrate does not "re-weigh conflicting evidence, make credibility determinations, or substitute [his] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d at 589. *See also Mastro v. Apfel*, 270 F.3d at 176.

Simply put, the Magistrate Judge applied this standard in his R&R when he reviewed the ALJ's determination to accord Dr. Hawkins' opinion "little weight." (Dk. No. 13 at 23–24.) Despite Norwood's claim, the record makes clear that the Magistrate Judge applied the correct legal standard when reviewing the ALJ. The Magistrate simply reviewed the record to determine whether substantial evidence supported the ALJ's decision regarding the inconsistencies in Dr. Hawkins' evaluations; he found that it did, as does this Court. Thus, the Magistrate Judge did not err in the standard of review he applied.

### CONCLUSION

Based on the foregoing analysis, this Court ADOPTS the R&R of the Magistrate Judge and OVERRULES Norwood's objections.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall accompany.

Date: February 21, 2013
Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge

11